## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Meier's Wine Cellars Acquisition, LLC, et al.[1] | Case No. 24-11575-MFW |
| Debtors. | (Jointly Administered) |

## ORDER (I) APPROVING THE SALE
### OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (II) GRANTING RELATED RELIEF

This matter coming before the Court on the *Motion of the Debtors and Debtors in Possession for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* (the "Sale Motion") [Docket No. 14],[2] filed by the debtors and debtors in possession (collectively, the "Debtors") in the above-

---

[1]     The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Meier's Wine Cellars Acquisition, LLC (5557); California Cider Co., Inc. (0443); Girard Winery LLC (5076); Grove Acquisition, LLC (9465); Meier's Wine Cellars, Inc. (2300); Mildara Blass Inc. (1491); Sabotage Wine Company, LLC (8393); Splinter Group Napa, LLC (1417); Thames America Trading Company Ltd. (0696); Vinesse, LLC (3139); Vintage Wine Estates, Inc. (CA) (2279); and Vintage Wine Estates, Inc. (NV) (5902).  The Debtors' noticing address in these chapter 11 cases is 205 Concourse Boulevard, Santa Rosa, California 95403.

[2]     Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Sale Motion or the Asset Purchase Agreement (as hereinafter defined), as applicable .

captioned chapter 11 cases (the "Chapter 11 Cases") and upon the First Day Declaration [Docket No. 12],the Raithel Declaration [Docket No. 15], the Kaufman Bidding Procedures Declaration [Docket No. 16], the Raithel Bidding Procedures Declaration [Docket No. 127], the *Declaration of Jeff Raithel in Support of the Debtors' Designation of Successful Bidders* [Docket No. 323] and the *Declaration of Samuel Gaudencio, Authorized Agent Bartow Ethanol of Florida L.C., Successful Bidder for Meier's Wine Cellars' Assets, Including Property, Brand and Inventory* [Docket No. 332], and upon the *Order (I) Approving Bidding Procedures for the Sale of Substantially of the Debtors' Assets, (II) Authorizing the Debtors to Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections Thereunder, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (VI) Granting Related Relief* [Docket No. 188] (the "Bidding Procedures Order"); and that certain asset purchase agreement, dated as of August 29, 2024, by and among Bartow Ethanol of Florida, L.C. and Vintage Wine Estates, Inc. (the "Asset Purchase Agreement"), a copy of which is attached hereto as Exhibit 1, by which Bartow Ethanol of Florida, L.C. (the "Buyer") submitted the highest or best bid for the Purchased Assets (as defined in the Asset Purchase Agreement); and the Court having conducted a hearing to consider certain relief requested in the Sale Motion on September 24, 2024 (the "Primary Sale Hearing"), at which time all interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the Court having reviewed and considered (i) the Sale Motion; (ii) the Asset Purchase Agreement; (iii) the Bidding Procedures Order and the record of the hearing before the Court on August 20, 2024 (the "Bidding Procedures Hearing"), after which hearing the Bidding Procedures Order was entered; (iv) the First Day Declaration, the Raithel Declaration

and the Kaufman Bidding Procedures Declaration and the Raithel Bidding Procedures

Declaration; and (v) the arguments of counsel made, and the evidence proffered or adduced, at

the Bidding Procedures Hearing or the Primary Sale Hearing; and after due deliberation the

Court having determined that the legal and factual bases set forth in the Sale Motion establish

just cause for the relief granted herein; and it appearing that the relief requested in the Sale

Motion is in the best interest of the Debtors, their estates and their creditors, and the Debtors

having demonstrated good, sufficient and sound business justifications for the relief granted

herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

       A.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction to consider the Sale

Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1134 and

the *Amended Standing Order of Reference from the United States District Court for the District*

*of Delaware*, dated as of February 29, 2012. This matter is a core proceeding pursuant to

28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

       B.    <u>Final Order</u>. This Order constitutes a final order within the meaning of

28 U.S.C. § 158(a).

       C.    <u>Statutory Predicates</u>. The statutory and other legal predicates for

the relief sought in the Sale Motion and granted herein are sections 105, 363 and 365 of title 11

of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006, 9007, 9008 and

---

[3]     The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Primary Sale Hearing.

9014 of the Bankruptcy Rules and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules").

        D.     Notice and Opportunity to Be Heard.  As evidenced with the certificates

of service filed with the Court [Docket Nos. 109, 169, 217, 218, 272, 273, 274, 333], the

Debtors have provided proper, timely, adequate and sufficient notice of, and a fair and

reasonable opportunity to object and be heard with respect to, the Sale Motion, the Bidding

Procedures, the Auctions, the Sale Hearings, the sale of the Purchased Assets pursuant to the

Asset Purchase Agreement (the "Sale Transaction") free and clear of any Liens within the

meaning of section 363(f) of the Bankruptcy Code and the Notice of Primary Auction Results

[Docket No. 291], in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code,

Bankruptcy Rules 2002, 4001, 6004, 6006, 9007 and 9014, Local Rules 2002-1, 6004-1 and

9006-1 and the Bidding Procedures Order, to all persons and entities entitled to such notice,

including the Sale Notice Parties (as defined in the Bidding Procedures) and all other persons

and entities as directed by the Court.  Such notice was good, sufficient and appropriate under

the circumstances, and no other or further notice of any of the foregoing is required.  With

respect to parties in interest whose identities could not be reasonably ascertained by the

Debtors, the Publication Notice (as defined in the Bidding Procedures Order) published in *USA

Today* on August 28, 2024, and in the Santa Rosa *Press Democrat* on August 27, 2024, was

sufficient and reasonably calculated to provide notice to such parties under the circumstances.

        E.     Disclosures.  The disclosures made by the Debtors in the Sale Motion,

the Sale Notice, the Notice of Primary Auction Results and all other related notices and

documents filed with the Court concerning the Asset Purchase Agreement and Sale Transaction

were complete and adequate.

F.    <u>Sound Business Purpose</u>.  The Debtors have demonstrated good, sufficient and sound business purposes and justifications for approval of the Sale Motion and the approval of and entry into the Sale Transaction, the Asset Purchase Agreement and any ancillary agreements thereto (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value and are beneficial to the Debtors' estates, and are in the best interests of the Debtors, their estates and their stakeholders; and (iii) are reasonable and appropriate under the circumstances.  Business justifications for entry into the Sale Transaction and the Asset Purchase Agreement include, but are not limited to, (A) the Asset Purchase Agreement constitutes the highest or best offer received for the Purchased Assets; (B) the Asset Purchase Agreement presents the best opportunity to maximize the value of the Purchased Assets on a going-concern basis and to avoid decline and devaluation as a result of delay or liquidation; (C) failure to consummate the Sale Transaction expeditiously, as provided under the Asset Purchase Agreement, could materially diminish creditor recoveries; and (D) the immediate consummation of the Sale Transaction is necessary to maximize the value of the Debtors' estates.

G.    <u>Compliance with Bidding Procedures</u>.  The Debtors conducted an open and fair Sale Process.  The Sale Process was non-collusive in all respects, and all interested parties were provided a full, fair and reasonable opportunity to make an offer to purchase the Purchased Assets.  The Debtors, the Buyer and their respective counsel and other advisors have complied with the Bidding Procedures and the Bidding Procedures Order in all respects.

H.    <u>Highest or Best Value</u>.  The Debtors determined, in their reasonable

business judgment, in a manner consistent with their fiduciary duties and in consultation with

the Consultation Parties, that the Buyer's Qualified Bid, as documented in the Asset Purchase

Agreement, was the highest or otherwise best Qualified Bid for the Purchased Assets.

Consummating the Sale Transaction will yield greater value to the Debtors' estates than would

have been provided by any other available alternative transaction.

I.    Fair Consideration.  The consideration to be paid by the Buyer under

the Asset Purchase Agreement constitutes (i) fair and reasonable consideration for

the Purchased Assets; and (ii) reasonably equivalent value and fair consideration under

the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent

Conveyance Act, the Uniform Voidable Transactions Act and other laws of the United States,

any state, territory, possession thereof or the District of Columbia.

J.    Free and Clear Sale.  The Debtors may sell the Purchased Assets free and

clear of all Liens (unless otherwise expressly assumed under, or expressly permitted by,

the Asset Purchase Agreement), because, in each case, one or more of the standards set forth in

section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Any holders of Liens that

objected to the Sale Transaction or the Sale Motion and that have a Lien on the Purchased

Assets could be compelled in a legal or equitable proceeding to accept money in satisfaction of

such Lien pursuant to section 363(f)(5), or fall within one or more of the other subsections of

section 363(f) and, therefore, are adequately protected by having their Liens on the Purchased

Assets attach solely to the proceeds of the Sale Transaction ultimately attributable to the sale of

the property in which such holders have a Lien, in the same order of priority, and with the same

validity, force and effect that such Liens had prior to the consummation of the Sale Transaction,

subject to any rights, claims or defenses of the Debtors and their estates.  Any Lien holders that

did not object, or that withdrew their objections, to the Sale Motion or the Sale Transaction, are deemed to have consented to the sale of the Purchased Assets free and clear of their respective Liens on the Purchased Assets pursuant to section 363(f)(2) of the Bankruptcy Code.

K.    <u>Buyer's Reliance on Free and Clear Sale</u>.  The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction or the other transactions contemplated thereby if the sale of the Purchased Assets were not free and clear of all Liens, or if the Buyer would, or in the future could, be liable for any such Liens. A sale of the Purchased Assets other than one free and clear of all Liens would adversely impact the Debtors, their estates and their creditors, and would yield substantially less value for the Purchased Assets and the Debtors' estates, with less certainty than provided by the Sale Transaction.  The total consideration to be provided under the Asset Purchase Agreement reflects the Buyer's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Liens, including, without limitation, any potential derivative, vicarious, transferee or successor liability Liens.

L.    <u>No Successor or Other Derivative Liability</u>.  By consummating the Sale Transaction pursuant to the Asset Purchase Agreement, the Buyer is not a mere continuation of any of the Debtors or any Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between the Buyer and any Debtor.  The Buyer is not holding itself out as a continuation of any Debtor.  The Buyer is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger or <u>de facto</u> merger of the Buyer and the Debtors or any of their estates. Neither the Buyer nor any of its affiliates or their respective successors, assigns, members,

-7-

partners, principals or shareholders (or the equivalent thereof) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any affiliate of any Debtor) or any Debtor's estate, except as expressly provided in the Asset Purchase Agreement. The sale and transfer of the Purchased Assets to the Buyer will not subject the Buyer to any liability with respect to the operation of the Debtors' businesses prior to the Closing or by reason of such transfer, except that, upon the Closing, the Buyer shall remain liable for the applicable Assumed Liabilities (as defined in the Asset Purchase Agreement).

      M.   <u>Good Faith</u>. The Debtors, the Buyer and their respective counsel and other advisors have negotiated and entered into the Asset Purchase Agreement and each of the transactions contemplated thereby in good faith, without collusion and from arms'-length bargaining positions. The Buyer is a good-faith purchaser and is acting in good faith within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. The Debtors were free to deal with any other party interested in acquiring all or some of the Purchased Assets. Neither the Debtors nor the Buyer have engaged in any conduct that would cause or permit the Sale Transaction, the Asset Purchase Agreement or any of the transactions contemplated thereby to be avoided or subject to monetary damages under section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m) or 364(e) of the Bankruptcy Code. The Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction. Specifically, the Buyer has not acted in a collusive manner with any person or entity, and the Buyer's participation in and bidding at the Primary Auction were not controlled by any agreement among bidders. All payments to be made by the Buyer and all agreements entered into by the Buyer and the Debtors and any other Seller under the Asset Purchase Agreement in connection

-8-

with the Sale Transaction have been disclosed and are appropriate.  The Asset Purchase

Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors

under laws of the United States, any state, territory, possession or the District of Columbia.

N.      Insider Status.  The Buyer is not an "insider" of any Debtor, as that term

is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or

controlling stockholders (or the equivalent thereof) exists between the Buyer and any of

the Debtors.

O.      Property of the Estates.  The Purchased Assets constitute property of

the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

P.      Validity of the Sale Transaction.  The consummation of

the Sale Transaction is legal, valid and properly authorized under all applicable provisions of

the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and

all of the applicable requirements of such sections have been complied with in all respects in

connection with the Sale Transaction.  As of the Closing, the transfer of the Purchased Assets to

the Buyer will be a legal, valid and effective transfer of the Purchased Assets and will vest the

Buyer with all right, title and interest of the Debtors in and to the Purchased Assets free and

clear of all Liens.  The Debtors have full corporate or other applicable authority to execute the

Asset Purchase Agreement and all other documents contemplated thereby, and the Sale

Transaction has been duly and validly authorized by all necessary corporate action of the

Debtors.  Upon entry of this Order, other than any consents identified in the Asset Purchase

Agreement, no consent or approval from any other person, entity or legal authority is required

to consummate the Sale Transaction.

Q.      No *Sub Rosa* Plan.  Neither the Sale Transaction nor the Asset Purchase

-9-

Agreement impermissibly restructures the rights of any of the Debtors' creditors or

impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors.

Neither the Sale Transaction nor the Asset Purchase Agreement constitutes a sub rosa or

de facto plan of reorganization or liquidation, as neither proposes to (i) impair or restructure

any existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights

with respect to any plan proposed by the Debtors; (iii) circumvent chapter 11 safeguards, such

as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or

equity interests or extend debt maturities.

       R.    No Stay of Order.  Time is of the essence to implement the Asset

Purchase Agreement and consummate the Sale Transaction.  The Sale Transaction must be

approved and consummated promptly in order to preserve the value of the Purchased Assets

and to ensure the Debtors' compliance with their obligations under their post-petition financing

agreements.  The Debtors have demonstrated compelling circumstances and sound business

justifications for the immediate approval and consummation of the Sale Transaction as

contemplated by the Asset Purchase Agreement.  Notwithstanding the provisions of

Bankruptcy Rules 6004(h), 6006(d), 7062 or any applicable provisions of the Local Rules, this

Order shall not be stayed and shall be effective and enforceable immediately upon entry.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

       1.    Sale Motion Granted.  The Sale Motion and the relief requested therein

(to the extent not previously granted by the Court pursuant to the Bidding Procedures Order or

otherwise) are GRANTED and approved as set forth herein.

       2.    Objections Overruled.  Any objections to the Sale Motion or the relief

requested therein that have not been withdrawn, waived or settled and all reservations of rights

included such objections are hereby overruled on the merits with prejudice.

-10-

3.      <u>Sale Transaction Approved</u>.  The Asset Purchase Agreement and all transactions contemplated thereby are APPROVED.

4.      <u>Debtors' Performance Authorized</u>.  The Debtors are hereby authorized to enter into and perform their obligations under the Asset Purchase Agreement and any exhibits or ancillary agreements related thereto, and to take such other actions as may be necessary or desirable to effectuate the terms of the Asset Purchase Agreement and other instruments or documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Asset Purchase Agreement, the Sale Transaction or this Order, including, without limitation, deeds, assignments, stock powers, transfers of membership interests and any other instruments of transfer, without further order of the Court.  The Debtors are hereby further authorized to take all other actions as may reasonably be requested by the Buyer or otherwise for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to the Buyer's possession any or all of the Purchased Assets as may be necessary or appropriate for the Debtors to perform their obligations under the Asset Purchase Agreement and consummate the Sale Transaction, without further order of the Court.

5.      The Debtors are hereby authorized and empowered to cause to be executed and filed such statements, instruments, releases and other documents with respect to the Purchased Assets that are necessary or appropriate to effectuate the Asset Purchase Agreement, the Sale Transaction or this Order, including, as applicable, amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.

6.      Valid Transfer.  Effective as of the Closing Date, the sale and assignment of the Purchased Assets by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the Purchased Assets, notwithstanding any requirement for approval or consent by any person, and will vest the Buyer with all right, title and interest of the Debtors in and to the Purchased Assets free and clear of all Liens (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement), pursuant to section 363(f) of the Bankruptcy Code.

7.      Free and Clear Sale.  Except to the extent specifically provided in the Asset Purchase Agreement, upon the Closing Date, the Debtors shall be, and hereby are, authorized and empowered, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell and transfer to the Buyer the Purchased Assets.  The sale and transfer of the Purchased Assets to the Buyer shall vest the Buyer with all right, title and interest of the Debtor in and to the Purchased Assets free and clear of any and all Liens of any person or entity, with all such Liens to attach to the net proceeds of the Sale Transaction ultimately attributable to the sale of the property in which such holders have a Lien, in the same order of priority, and with the same validity, force and effect that such Liens had prior to the consummation of the Sale Transaction, subject to any rights, claims or defenses of the Debtors or their estates.  Following the Closing, no holder of any Lien on any of the Purchased Assets shall interfere with the Buyer's use or enjoyment of any of the Purchased Assets based on or related to such Lien or any actions that the Debtors have taken or may take in their Chapter 11 Cases.

8.      The provisions of this Order authorizing the sale and transfer of the Purchased Assets free and clear of Liens shall be self-executing, and neither the Debtors nor

RLF1 31549998v.1

the Buyer shall be required to execute or file releases, termination statements, assignments,

consents or other instruments in order to effectuate, consummate or implement the provisions of

this Order.  For the avoidance of doubt, on or after the Closing Date, the Debtors and/or

the Buyer shall be authorized, but not directed, to file any such releases, termination statements,

assignments, consents or other instruments in any jurisdiction to record the release, discharge

and termination of Liens on the Purchased Assets pursuant to the terms of this Order.

   9. <u>Direction to Creditors</u>.  This Order shall be (a) effective as

a determination that, as of the Closing Date, all Liens on the Purchased Assets (unless

otherwise expressly assumed under, or expressly permitted by, the Asset Purchase Agreement)

shall be unconditionally released, discharged and terminated as to the Buyer and the Purchased

Assets; and (b) binding upon all persons and entities, including all the Debtors' creditors and

any holder of a Lien in any of the Purchased Assets, and all such persons and entities are hereby

authorized and directed to execute such documents and take all other actions as may be

reasonably necessary to release their respective Liens on the Purchased Assets, if any.  If any

person or entity that has filed a financing statement, mortgage, mechanics lien, <u>lis</u> <u>pendens</u> or

other document, instrument, notice or agreement evidencing any Lien on the Purchased Assets

has not delivered to the Debtors on or before the Closing, in proper form for filing and executed

by the appropriate parties, termination statements, releases or instruments of satisfaction that

the person or entity has with respect to the Purchased Assets, the Debtors and/or the Buyer are

authorized to (x) execute and file such termination statements, releases, instruments of

satisfaction or other documents with respect to the Purchased Assets on behalf of the applicable

person or entity; and (y) file, register or otherwise record a certified copy of this Order which,

once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release

RLF1 31549998v.1

of all Liens on the Purchased Assets.  This Order is deemed to be in recordable form sufficient

to be placed in the filing or recording system of each and every federal, state, local, tribal or

foreign government agency, department or office.

10.    <u>Direction to Recording Officers</u>.  This Order shall be binding upon all

persons and entities, including filing agents or officers, title agents or companies, recorders of

mortgages or deeds, registrars, administrative agencies, governmental units or departments,

secretaries of state, governmental officials and all other persons or entities that may be required

by operation of law, the duties of their office or contract to accept, file, register or otherwise

record or release any documents or instruments regarding the Purchased Assets or who may be

required to report or insure any title or state of title in or to the Purchased Assets, (collectively,

the "<u>Recording Officers</u>").  All Recording Officers are hereby authorized to (a) accept any and

all documents or instruments necessary and appropriate to consummate the Sale Transaction or

to record and reflect that the Buyer is the owner of the Purchased Assets free and clear of all

Liens (unless otherwise expressly assumed under, or expressly permitted by, the Asset Purchase

Agreement) and (b) strike all recorded Liens on the Purchased Assets from their records.

11.    <u>Direction to Surrender the Purchased Assets</u>.  All persons or entities in

possession or control of any of the Purchased Assets, either presently or on or before

the Closing Date, are directed to surrender possession or control of the Purchased Assets to

the Buyer on the Closing Date.

12.    <u>No Successor Liability</u>.  The Buyer and its affiliates and their respective

predecessors, successors, assigns, members, partners, officers, directors, principals and

shareholders (or the equivalent thereof) are not and shall not be (a) deemed a "successor" in any

respect to any of the Debtors or any of their estates as a result of the consummation of

-14-

the Sale Transaction or any other event occurring in the Debtors' Chapter 11 Cases under any theory of law or equity; (b) deemed to have, de facto or otherwise, merged or consolidated with or into any of the Debtors or any of their estates; (c) deemed to be an alter ego of or have a common identity with the any of the Debtors; (d) deemed to have a continuity of enterprise with any of the Debtors; or (e) deemed to be a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors, including (with respect to clauses (a) through (e) of this paragraph) within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, products liability or other law, doctrine, rule or regulation (including any filing requirements under any such laws, rules or regulations) with respect to the Debtors' liability under such law, doctrine, rule or regulation.

13.    The Buyer shall not assume, nor be deemed to have assumed or in any way be responsible for, any liability or obligation of any of the Debtors or any of their estates including, but not limited to, any Excluded Liabilities, any bulk sales law, successor or vicarious liability, liability or responsibility for any claim against any of the Debtors or against any insider of any of the Debtors or similar liability except as otherwise expressly provided in the Asset Purchase Agreement, and the Sale Motion, Sale Notice and Notice of Primary Auction Results contain sufficient notice of such limitation in accordance with applicable law. Except for the Assumed Liabilities, the transfer of the Purchased Assets to the Buyer under the Asset Purchase Agreement shall not result in (a) the Buyer, its affiliates or any of their respective predecessors, successors, assigns, members, partners, officers, directors, principals or shareholders (or the equivalent thereof) or any of the Purchased Assets having any liability or responsibility for any claim against any of the Debtors or against any insider of any of the Debtors (including, without limitation, Excluded Liabilities); (b) the Buyer, its affiliates or any

-15-

of their respective predecessors, successors, assigns, members, partners, officers, directors,

principals or shareholders (or the equivalent thereof) or any of the Purchased Assets having any

liability whatsoever with respect to, or being required to satisfy in any manner, whether at law

or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Liens or

Excluded Liabilities; or (c) the Buyer, its affiliates or any of their respective predecessors,

successors, assigns, members, partners, officers, directors, principals or shareholders (or the

equivalent thereof) or any of the Purchased Assets having any liability or responsibility to any

of the Debtors except as is expressly set forth in the Asset Purchase Agreement.

14.    Effective upon the Closing Date, all persons and entities are forever

prohibited and enjoined from commencing or continuing in any manner any action or other

proceeding, whether in law or equity, in any judicial, administrative, arbitral or other

proceeding against the Buyer, its assets (including the Purchased Assets) or its successors or

assigns, with respect to any (a) Lien on the Purchased Assets or (b) successor, transferee,

vicarious or other similar liability or theory of liability, including (i) commencing or continuing

any action or other proceeding pending or threatened, in any manner or place, that does not

comply with, or is inconsistent with, the provisions of this Order or other orders of the Court or

the agreements or actions contemplated or taken in respect hereof or thereof; (ii) enforcing,

attaching, collecting or recovering in any manner any judgment, award, decree or order;

(iii) creating, perfecting or enforcing any Lien; (iv) asserting any setoff, right of subrogation or

recoupment of any kind; or (v) revoking, terminating or failing or refusing to renew any license,

permit or authorization to operate any of the Purchased Assets or conduct any of the businesses

operated with the Purchased Assets.

15.    Licenses and Permits.  To the extent provided in the Asset Purchase

Agreement and available under applicable law, the Buyer shall be authorized, as of the Closing

Date, to operate under any license, permit, registration and any other governmental

authorization or approval of the Debtors with respect to the Purchased Assets.  The Buyer shall

apply for and obtain any necessary license or permit promptly after the Closing Date, and such

license or permit of the Debtors shall remain in place for the Buyer's benefit until a new license

or permit is obtained.

16.     To the extent provided by section 525 of the Bankruptcy Code,

no governmental unit may revoke or suspend any permit or license relating to the operation of

the Purchased Assets sold, transferred or conveyed to the Buyer on account of the filing or

pendency of these Chapter 11 Cases or the consummation of the Sale Transaction.

17.     <u>Good-Faith Purchaser</u>.  The Buyer is a good-faith purchaser within

the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections

afforded thereby.  Pursuant to section 363(m) of the Bankruptcy Code, if any or all of

the provisions of this Order are hereafter reversed, modified or vacated by a subsequent order of

this Court or any other court, such reversal, modification or vacatur shall not affect the validity

or enforceability of any sale, transfer or assignment under the Asset Purchase Agreement or

obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal

prior to the Closing Date) and, notwithstanding any reversal, modification or vacatur, any sale,

transfer or assignment under the Asset Purchase Agreement, shall be governed in all respects by

the original provisions of this Order or the Asset Purchase Agreement, as applicable.

18.     <u>No Avoidance</u>.  Neither the Sale Transaction nor the Asset Purchase

Agreement is subject to avoidance, and no party is entitled to any damages or other recovery in

connection therewith under section 363(n) of the Bankruptcy Code.

-17-

19.    <u>Bulk Sales</u>.  No bulk sales law, bulk transfer law or similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction.

20.    <u>Amendments</u>.  The Asset Purchase Agreement may be amended, supplemented or otherwise modified by the parties thereto and in accordance with the terms thereof, without further order of the Court; <u>provided</u>, <u>that</u>, any such amendment, supplement or modification shall not have a material adverse effect on the Debtors' estates.

21.    <u>Binding Order</u>.  This Order and the Asset Purchase Agreement shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Buyer, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case of any of the Debtors if any of these Chapter 11 Cases is converted from a case under chapter 11 to a case under chapter 7, all creditors of any and all of the Debtors (whether known or unknown), all Counterparties to any contracts and all Recording Officers.  Neither the Sale Transaction nor the Asset Purchase Agreement shall be subject to rejection or avoidance under any circumstances.  This Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer and its respective successors and assigns.

22.    <u>Failure to Specify Provisions; Conflicts</u>.  The failure specifically to include or mention any particular provision of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Buyer that the Asset Purchase Agreement be authorized and approved in its entirety, including any amendments thereto as may be made by the parties thereto in accordance with the terms thereof and this Order.

-18-

23.     Further Assurances.  From time to time, as and when requested, all parties to the Sale Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale Transaction, including such actions as may be necessary to vest, perfect, confirm, record or otherwise in the Buyer its right, title and interest in and to the Purchased Assets.

24.     Automatic Stay.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified to the extent necessary, without further order of the Court, to allow the Buyer to deliver any notice provided for in the Asset Purchase Agreement and to take any and all actions permitted or required under the Asset Purchase Agreement in accordance with the terms and conditions thereof.

25.     No Stay of Order.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062 and any applicable Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.  The provisions of this Order shall be self-executing. Time is of the essence in implementing the Asset Purchase Agreement and closing the Sale Transaction.  Any party objecting to this Order or any of the relief granted herein must exercise due diligence in filing an appeal and obtaining a stay prior to the Closing of the Sale Transaction or risk its appeal being foreclosed as moot.

26.     Governing Terms.  To the extent this Order is inconsistent with any prior order or pleading in these Chapter 11 Cases, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Asset Purchase Agreement, the terms of this Order shall govern.

27.     Retention of Jurisdiction.  This Court shall retain exclusive jurisdiction to

(a) interpret, implement and enforce the terms and provisions of this Order, the Asset Purchase

Agreement, including all amendments thereto and any waivers and consents thereunder and

each of the agreements executed in connection therewith; and (b) decide any issues or disputes

concerning this Order, the Asset Purchase Agreement or the rights and duties of the parties

hereunder or thereunder, including the interpretation of the terms, conditions and provisions

hereof and thereof, and the status, nature and extent of the Purchased Assets.

28.     The Debtors are authorized and empowered to take all actions necessary

or appropriate to implement the relief granted in this Order.


**Dated: September 24th, 2024**          **MARY F. WALRATH**
**Wilmington, Delaware**                 **UNITED STATES BANKRUPTCY JUDGE**

RLF1 31549998v.1