# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Meier's Wine Cellars Acquisition, LLC, <u>et al</u>.[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11575 (MFW)<br><br>(Jointly Administered) |

## ORDER (I) APPROVING THE SALE OF CERTAIN DEBTOR ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES; (II) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF

This matter coming before the Court on the *Motion of the Debtors and Debtors in Possession for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter into One or More Stalking Horse Purchase Agreements and to Provide Bidding Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief* (the "Sale Motion") [Docket No. 14],[2]

---

[1]     The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Meier's Wine Cellars Acquisition, LLC (5557); California Cider Co., Inc. (0443); Girard Winery LLC (5076); Grove Acquisition, LLC (9465); Meier's Wine Cellars, Inc. (2300); Mildara Blass Inc. (1491); Sabotage Wine Company, LLC (8393); Splinter Group Napa, LLC (1417); Thames America Trading Company Ltd. (0696); Vinesse, LLC (3139); Vintage Wine Estates, Inc. (CA) (2279); and Vintage Wine Estates, Inc. (NV) (5902). The Debtors' noticing address in these chapter 11 cases is 205 Concourse Boulevard, Santa Rosa, California 95403.

[2]     Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Sale Motion or the Birch Run APA (as hereinafter defined), as applicable.

filed by the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned

chapter 11 cases (the "Chapter 11 Cases") and upon the First Day Declaration [Docket No. 12], the

Raithel Declaration [Docket No. 15], and the Kaufman Bidding Procedures Declaration [Docket

No. 16], the *Declaration of Jeff Raithel in Support of the Debtors' Designation of Successful*

*Bidders* [Docket No. 323] and the *Declaration of Seth Kaufman in Support of the Sale of Certain*

*Assets to Adair Winery, Inc.* [Docket No. 322] and upon the *Order (I) Approving Bidding*

*Procedures for the Sale of Substantially of the Debtors' Assets, (II) Authorizing the Debtors to*

*Enter into One or More Stalking Horse Agreements and to Provide Bidding Protections*

*Thereunder, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof,*

*(IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and*

*Approving the Form and Manner of Notice Thereof and (VI) Granting Related Relief* [Docket

No. 181] (the "Bidding Procedures Order"); and that certain Asset Purchase Agreement, dated as

of September 17, 2024, by and among Adair Winery, Inc. and Vintage Wine Estates, Inc. (as

amended, the "Birch Run APA"), a copy of which is attached hereto as Exhibit 1, by which Adair

Winery, Inc. (the "Purchaser") submitted the highest or best bid for the Purchased Assets

(as defined in the Birch Run APA); and the Court having conducted a hearing to consider certain

relief requested in the Sale Motion on September 24, 2024 (the "Sale Hearing"), at which time all

interested parties were offered an opportunity to be heard with respect to the Sale Motion; and the

Court having reviewed and considered (i) the Sale Motion; (ii) the Birch Run APA; (iii) the

Bidding Procedures Order and the record of the hearing before the Court on September 24, 2024,

after which hearing the Bidding Procedures Order was entered; (iv) the Bid Protections Order (as

defined in the Birch Run APA); (v) the First Day Declaration, the Raithel Declaration, and the

Kaufman Bidding Procedures Declaration; and (vi) the arguments of counsel made, and the

evidence proffered or adduced, at the Bidding Procedures Hearing or the Sale Hearing; and due notice of the Sale Motion and this Order having been provided; and all objections to the Sale Transaction (as defined below) and this Order having been withdrawn, resolved, or overruled on the merits; and this Court having found that the Debtors' notice of the Sale Transaction and opportunity for a hearing on the Sale Transaction, including the adequacy of the Sale Notice, the Assumption and Assignment Notice (as defined in the Sale Motion), the *Notice of Primary Auction Results* [Dkt. 291] (the "Auction Results Notice"), and all other related notices and documents filed with the Court concerning the Birch Run APA and Sale Transaction were appropriate and no other notice need be provided; and after due deliberation the Court having determined that the legal and factual bases set forth in the Sale Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interest of the Debtors, their estates and their creditors, and the Debtors having demonstrated good, sufficient and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.    Jurisdiction and Venue. This Court has jurisdiction over this matter and over the property of the Debtors' estates, including the Purchased Assets to be sold, transferred, or conveyed pursuant to the Birch Run APA, pursuant to 28 U.S.C. §§ 157, 1134, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these Chapter 11 Cases and approval of the Sale Transaction is

---

[3]    The findings and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such. The Court's findings also shall include any oral findings of fact and conclusions of law made by the Court during the Sale Hearing.

proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

   B. <u>Final Order</u>.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, and authorizes the closing of the Sale Transaction contemplated hereby without regard to any stay or delay in its implementation.

   C. <u>Statutory Predicates</u>.  The statutory and other legal predicates for the approvals and authorizations herein, including for the Sale Transaction, are sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004, 6006, 9006, 9007, 9008, and 9014 of the Bankruptcy Rules and Rules 2002-1, 6004-1 and 9006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

   D. <u>Notice and Opportunity to Be Heard</u>.  As evidenced with the certificates of service filed with the Court [Docket Nos. 109, 169, 217, 218, 272, 273, 274, 333], the Debtors have provided proper, timely, adequate, and sufficient notice of, and a fair and reasonable opportunity to object and be heard with respect to, the Sale Motion, the Bidding Procedures, the Bid Protections Order, the Auction, the Sale Hearing, the sale of the Purchased Assets pursuant to the Birch Run APA (the "<u>Sale Transaction</u>") free and clear of any Liens within the meaning of section 363(f) of the Bankruptcy Code, Auction Results Notice, the Assumption and Assignment Notice [Docket No. 188] and the assumption and assignment of the executory contracts and unexpired leases to be assumed and assigned to Purchaser at Closing (as defined in the Birch Run APA) pursuant to this Order and the terms of the Birch Run APA, in accordance

with sections 102(1), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, 6006, 9006, 9007, 9008, and 9014, Local Rules 2002-1, 6004-1, and 9006-1, and the Bidding Procedures Order, to all persons and entities entitled to such notice, including, without limitation: (i) the Sale Notice Parties (as defined in the Bidding Procedures); (ii) the Office of the United States Trustee for the District of Delaware; (iii) counsel for the DIP Agent and DIP Lenders; (iv) all persons known, or reasonably believed to have asserted an interest in, or liens on or encumbrances with respect to, the Purchased Assets; (v) all Non-Debtor Counterparties to the Purchased Contracts; (vi) the Attorneys General in the State(s) where the Purchased Assets are located; (vii) all state and local taxing authorities in the State(s) where the Purchased Assets are located; (viii) the Internal Revenue Service; (ix) the United States Securities and Exchange Commission; (x) the ABC (as defined below); (xi) the United States Attorney's Office for the District of Delaware; (xii) all parties that filed requests for notices under Bankruptcy Rule 9010(b) or were entitled to notice under Bankruptcy Rule 2002 or any applicable Local Rule, all creditors (whether their claims are liquidated, contingent, or unmatured) of the Debtors; and (xiii) all other persons and entities as directed by the Court. The Debtors also gave due and proper notice of the potential assumption and assignment of each Purchased Contract (as defined in the Birch Run APA) available to be assumed by the Debtors and assigned to Purchaser to each non-debtor party under each such Purchased Contract (collectively, the "Non-Debtor Counterparties") as reflected on the Assumption and Assignment Notice, filed on August 23, 2024 [Docket No. 188]. Such notice was good, sufficient, and appropriate under the circumstances, and, in the absence of an objection that is filed and served in accordance with the applicable Assumption and Assignment Notice, the counterparties to the Purchased Contracts (as defined in the Birch Run APA) are hereby deemed to consent to the relief granted herein

unless otherwise provided in this Order.  No other or further notice of, opportunity to object to, or other opportunity to be heard regarding the Sale Notice, the Assumption and Assignment Notice(s), the Auction, the Sale Hearing, the assumption and assignment of the Purchased Contracts, the Sale Transaction, or of the entry of this Order is necessary or shall be required. With respect to parties in interest whose identities could not be reasonably ascertained by the Debtors, the Publication Notice (as defined in the Bidding Procedures Order) published in *USA Today* on August 28, 2024, and in the Santa Rosa *Press Democrat* on August 27, 2024, was sufficient and reasonably calculated to provide notice to such parties under the circumstances.

E.     <u>Disclosures</u>.  The disclosures made by the Debtors in the Sale Motion, the Sale Notice, the Assumption and Assignment Notice, the Notice of Primary Auction Results, and all other related notices and documents filed with the Court concerning the Birch Run APA and Sale Transaction were complete and adequate.

F.     <u>Sound Business Purpose</u>.    The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of the Sale Motion, entry into the Birch Run APA, transfer of the Purchased Assets, and assumption and assignment of the Purchased Contracts to Purchaser under sections 363 and 365 of the Bankruptcy Code, and such actions are entirely fair and appropriate exercises of the Debtors' reasonable business judgment and the approval of, and entry into, the Sale Transaction, the Birch Run APA, and any ancillary agreements thereto (i) are a result of due deliberation by the Debtors and constitute a sound and reasonable exercise of the Debtors' business judgment consistent with their fiduciary duties; (ii) provide value and are beneficial to the Debtors' estates, and are in the best interests of the Debtors, their estates, and their stakeholders; and (iii) are reasonable and appropriate under the circumstances.  Business justifications for entry into the Sale Transaction and the Birch Run

-6-

APA include, but are not limited to, (A) the Birch Run APA constitutes the highest or best offer received for the Purchased Assets; (B) the Birch Run APA presents the best opportunity to maximize the value of the Purchased Assets on a going-concern basis and to avoid decline and devaluation as a result of delay or liquidation; (C) failure to consummate the Sale Transaction expeditiously, as provided under the Birch Run APA, could materially diminish creditor recoveries; and (D) the immediate consummation of the Sale Transaction is necessary to maximize the value of the Debtors' estates.

G.    <u>Compliance with Bidding Procedures</u>.  The Debtors, the Purchaser, and their professionals have complied, in good faith, in all respects with the Bidding Procedures and the Bidding Procedures Order and the bidding process was free of any fraud, collusion, or unfair dealing.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing or submitted by affidavit or declaration at, or prior to, the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures and the Bidding Procedures Order, the Debtors (a) afforded all potentially interested parties a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Purchased Assets; (b) provided all interested parties, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Purchased Assets; and (c) considered any bids submitted for all or any part of the Purchased Assets.

H.    <u>Highest or Best Value</u>.  (i) The Debtors and their advisors conducted a fair, extensive, and open sale process that complied with the Bidding Procedures and the Bidding Procedures Order in all respects; (ii) the sale process and the Bidding Procedures set forth in the Bidding Procedures Order were: (a) non-collusive; (b) substantively and procedurally fair to all

parties in interest; (c) duly noticed; (d) provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Purchased Assets, and (e) resulted in a fair bidding process; (iii) the process conducted by the Debtors pursuant to the Bidding Procedures obtained the highest or otherwise best value for the Purchased Assets for the Debtors and their estates, and any other transaction would not have yielded as favorable an economic result; (iv) Purchaser has put forth the highest or otherwise best offer for the Purchased Assets pursuant to the terms of the Bidding Procedures Order; (v) the Purchase Price (as defined in the Birch Run APA) received by the Debtors for the Purchased Assets, after considering all of the relevant facts and circumstances of the Sale Transaction as a whole, is fair; and (vi) the Bidding Procedures resulted in the highest or best value for the Purchased Assets for the Debtors and their estates.

I.    The Debtors determined, in a valid and sound exercise of their business judgment and after a robust and extensive marketing process, the Sale Transaction represented the highest or otherwise best bid for the Purchased Assets.  Therefore, Purchaser's bid was designated the Successful Bid (as defined in the Bidding Procedures) for the Purchased Assets. The Bidding Procedures have been complied with in all respects by the Debtors and the Purchaser and afforded a full, fair, and reasonable opportunity for any entity or person to make a higher or otherwise better offer for the Purchased Assets.

J.    Fair Consideration.  The offer of Purchaser, upon the terms and conditions set forth in the Birch Run APA, including the form and total consideration (including the Purchase Price) to be realized by the Debtors pursuant to the Birch Run APA:  (i) is the highest or best offer received by the Debtors and their estates; (ii) is fair and reasonable; (iii) is in the best interests of the Debtors' stakeholders and estates; (iv) constitutes full and fair consideration and reasonably equivalent value for the Purchased Assets; and (v) will provide a greater

-8-

recovery for the Debtors' creditors, and other interested parties than would be provided by any other practically available alternative. No other entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than Purchaser.

        K.     <u>Satisfaction of 363(f) Standards</u>. The Debtors are authorized to sell the Purchased Assets free and clear of all Liens, Claims, and Interests (as defined in Paragraph 13 hereof, and as otherwise expressly provided in the Birch Run APA (with such Liens, Claims, and Interests attaching to the proceeds with the same nature, validity, priority, extent, perfection, and force and effect that the Liens, Claims, and Interests encumbered the Purchased Assets immediately prior to the entry of this Order) because, with respect to each creditor or other person or entity asserting a Lien, Claim, or Interest, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Each creditor or other person or entity asserting a Lien, Claim, or Interest in the Purchased Assets (i) has, subject to the terms and conditions of this Order, consented to the Sale Transaction, or is deemed to have consented to the Sale Transaction; (ii) could be compelled in a legal or equitable proceeding to accept money in satisfaction of such Lien, Claim, or Interest; or (iii) otherwise falls within one or more of the provisions of section 363(f) of the Bankruptcy Code. Those holders of the Liens, Claims, and Interests who did not object (or who ultimately withdrew their objections, if any) to the Sale Transaction, or the Sale Motion, are deemed to have consented to the Sale Motion and the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.

        L.     Purchaser would not have entered into the Birch Run APA and would not consummate the Sale Transaction contemplated thereby, thus adversely affecting the Debtors and their estates and their creditors: (i) if the sale of the Purchased Assets was not free and clear of all Liens, Claims, and Interests, including, without limitation, any rights, Liens, Claims, or

Interests based on any successor or transferee liability, or (ii) if Purchaser would, or in the future could, be liable for any Liens, Claims, or Interests, including, without limitation, any rights, Liens, Claims, or Interests based on any successor or transferee liability.  Purchaser will not consummate the Sale Transaction unless this Court expressly orders that none of the Purchaser, its Affiliates (as defined in the Birch Run APA), its present or contemplated members or shareholders, or the Purchased Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, or otherwise, directly or indirectly, any Liens, Claims, and Interests, including rights or claims based on any successor or transferee liability other than as expressly set forth in the Birch Run APA.  The total consideration to be provided under the Birch Run APA reflects the Purchaser's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Liens, Claims, and Interests. Accordingly, if the Debtors did not sell the Purchased Assets free and clear of all Liens, Claims, and Interests, it would adversely impact the Debtors' estates because the sale of Purchased Assets other than free and clear of all Liens, Claims, and Interests would be of substantially less value to the Debtors' estates.

M.    Except with respect to an Assumed Liability or Permitted Exception that the Purchaser has expressly agreed to permit to survive the Closing pursuant to the express terms of the Birch Run APA, the Liens shall attach to the consideration to be received by the Debtors (if any) in the same priority and subject to the same defenses and avoidability, if any, as before the Closing, and Purchaser would not enter into the Birch Run APA to purchase the Purchased Assets or proceed to the Closing otherwise.

N.    Transfer of Assets Free and Clear.  The transfer of the Purchased Assets

-10-

to Purchaser free and clear of any Liens, Claims, and Interests will not result in any undue burden or prejudice to any holders of any Liens, because all such Liens of any kind or nature whatsoever shall attach to the net proceeds (if any) of the sale of the Purchased Assets received by the Debtors in the order of their priority, with the same validity, force, and effect which they now have as against the Purchased Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto.  All persons having Liens of any kind or nature whatsoever against or in any of the Debtors or the Purchased Assets shall be forever barred and estopped from pursuing or asserting such Liens (subject to the Assumed Liabilities and Permitted Exceptions that the Purchaser has expressly agreed to permit to survive the Closing pursuant to the express terms of the Birch Run APA) against Purchaser, or any of its respective assets, property, successors or assigns, or the Purchased Assets.  Purchaser shall have no obligations with respect to any Liens, Claims, and Interests of the Debtors.

O.    No Successor or Other Derivative Liability.  By consummating the Sale Transaction pursuant to the Birch Run APA, the Purchaser is not a mere continuation of any of the Debtors or any Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between the Purchaser and any Debtor.  The Purchaser is not holding itself out as a continuation of any Debtor.  The Purchaser is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors or any of their estates. Neither the Purchaser nor any of its Affiliates or their respective successors, assigns, members, partners, principals or shareholders (or the equivalent thereof) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any Affiliate of any Debtor) or any Debtor's estate, except as expressly provided in the Birch Run APA.  The sale and transfer of the

-11-

Purchased Assets to the Purchaser, including the assumption by the Debtors and assignment, transfer and/or sale to the Purchaser of any of the Purchased Contracts, will not subject the Purchaser to any liability with respect to the operation of the Debtors' businesses prior to the Closing or by reason of such transfer, except that, upon the Closing, the Purchaser shall remain liable for the applicable Assumed Liabilities and Permitted Exceptions (each, as defined in the Birch Run APA).

P.      <u>Good Faith</u>.  The Birch Run APA was not entered into and the Sale Transaction is not being consummated for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors.  The Debtors and the Purchaser were each represented by separate and independent advisors throughout the negotiation of the terms of the Birch Run APA.  All payments and other consideration to be made by Purchaser in connection with the Sale Transaction have been disclosed.  Neither the Debtors nor Purchaser are proposing to consummate the Sale Transaction fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia.

Q.      The Purchaser is a purchaser in "good faith," as that term is used in the Bankruptcy Code and the decisions thereunder and is entitled to the protections of section 363(m) of the Bankruptcy Code with respect to the Purchased Assets.  The Birch Run APA was negotiated and entered into in good faith, based upon arm's-length bargaining, and without collusion or fraud of any kind.  Neither the Debtors nor Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the Birch Run APA, or to

the consummation of the Sale Transaction contemplated thereby, and the transfer of the Purchased Assets, and the Purchased Contracts, to Purchaser.  Purchaser is purchasing the Purchased Assets (including the Purchased Contracts) in good faith and is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and is, therefore, entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with these cases, the Sale Transaction, and post-closing ownership of the Purchased Assets, among other things:  (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Purchaser fully complied with all of the provisions of the Bankruptcy Code, the Bidding Procedures Order, and the Bidding Procedures; (iii) there was no fraud, collusion, or unfair dealing in connection with the Purchaser's bid, the Birch Run APA, the bidding process, or in any part of the sale of the Purchased Assets; (iv) the Purchaser has fully disclosed all of its connections with the Debtors; (v) all consideration to be paid or provided to the Debtors by Purchaser and other agreements or arrangements entered into by Purchaser in connection with the sale have been disclosed; (vi) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vii) the negotiations and execution of the Birch Run APA and any other agreements or instruments related thereto were in good faith and free from any collusion, fraud, or unfair dealing.

    R. <u>Insider Status</u>.  The Purchaser is not an "insider" of any Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders (or the equivalent thereof) exists between the Purchaser and any of the Debtors.

    S. <u>Assumption and Assignment of Purchased Contracts</u>.  The Debtors have

sound business reasons for entering into the Birch Run APA and transferring, or assuming and assigning (with respect to the Purchased Contracts), the Purchased Assets, as more fully set forth in the Sale Motion and the Birch Run APA, and as demonstrated at the Sale Hearing, and it is entirely fair to all parties in interest, and a reasonable exercise by the Debtors of the Debtors' business judgment to transfer, or assume and assign (with respect to the Purchased Contracts), the Purchased Assets to the Purchaser and to consummate the Sale Transaction with the Purchaser.  Each and every provision of the Purchased Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Purchased Contract has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.  All counterparties of the Purchased Contracts that did not or do not timely file an objection to the assumption and/or assignment of the Purchased Contract(s) to which they are a counterparty are deemed to consent to the assumption and/or assignment by the Debtors of their Purchased Contract to the Purchaser, and the Purchaser shall enjoy all of the rights and benefits under each such Purchased Contract as of the applicable date of assumption and/or assignment without the necessity of obtaining such non-debtor party's consent to the assumption or assignment thereof.  All counterparties of the Purchased Contracts for which the deadline to file an objection to the assumption and assignment to the Purchaser has not passed as of the date of entry of this Order, and that did not or do not timely file such an objection prior to the applicable deadline, shall be deemed to consent to the assumption and/or assignment by the Debtors of their Purchased Contract to the Purchaser effective as of the Closing Date (as defined in the Birch Run APA), and the Purchaser shall enjoy all of the rights and benefits under each Purchased Contract as of the applicable date of assumption and/or assignment without the necessity of obtaining such non-debtor party's

consent to the assumption or assignment thereof.  Upon the assignment and sale to the Purchaser in accordance with the terms of the Birch Run APA, the Purchased Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to the Purchaser, notwithstanding any provision in the Purchased Contracts prohibiting or otherwise restricting assignment or transfer. To the extent any Purchased Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of the Birch Run APA and, other than with respect to Assumed Liabilities and Permitted Exceptions, the Purchaser shall have no liability or obligation for any (i) defaults or breaches under such agreement that relate to acts or omissions that arose or occurred prior to the Closing and (ii) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, any right of recoupment) with respect to such Purchased Contract, that relate to any acts or omissions that arose or occurred prior to the Closing.  The Purchaser shall not assume or become liable for any Liens, Claims, and Interests relating to the Purchased Assets being sold by the Debtors, except as may be expressly set forth in the Birch Run APA.

       T.      Pursuant to the Birch Run APA, the Cure Costs will be paid by the Purchaser in accordance with the terms of the Birch Run APA.  The Purchaser has demonstrated adequate assurance of future performance with respect to each Purchased Contract (within the meaning of section 365 of the Bankruptcy Code) that is assumed by the Purchaser or any of its permitted assignees to which such Purchased Contract is assumed and/or assigned by the Debtors, including a promise to perform the Debtors' obligations under such Purchased Contract for periods after the Closing.  The Cure Costs are deemed the amounts necessary to "cure" (within the meaning of section 365(b)(l) of the Bankruptcy Code) all "defaults" (within the

meaning of section 365(b) of the Bankruptcy Code) under such Purchased Contracts that are assumed.  The Purchaser's payment of Cure Costs in accordance with the terms of the Birch Run APA and the Purchaser's promise under the Birch Run APA to perform the obligations under the Purchased Contracts as of the Closing shall constitute adequate assurance of future performance under such Purchased Contracts.  Any objections to the Cure Costs, to the extent not otherwise resolved, are hereby overruled.  To the extent that any counterparty failed to timely object to its Cure Cost(s) or to raise any other alleged default or breach of contract, such counterparty is deemed to have consented to such Cure Cost and to the assignment of its respective Purchased Contract(s) to the Purchaser and to have waived any other defaults or breaches.  The Court finds that with respect to all Purchased Contracts, the payment of the Cure Costs as provided in the Birch Run APA is reasonable and appropriate and is deemed to fully satisfy the Debtors' obligations under sections 365(b) and 365(f) of the Bankruptcy Code.  Accordingly, all of the requirements of sections 365(b) and 365(f) of the Bankruptcy Code have been satisfied for the assumption by the Debtors, and the assignment by the Debtors to the Purchaser, of each Purchased Contract to be assumed and/or assigned to the Purchaser as of Closing.

U.    The assumption and assignment of the Purchased Contracts pursuant to the terms of this Order is integral to the Birch Run APA and is in the best interests of the Debtors, their estates, their stakeholders and other parties in interest, and represents the exercise by the Debtors of the sound and prudent business judgment of the Debtors' estates.

V.    <u>Property of the Estates</u>.  The Purchased Assets constitute property of the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

W.    <u>Validity of the Sale Transaction</u>.    The    consummation    of

-16-

the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f), and all of the applicable requirements of such sections have been complied with in all respects in connection with the Sale Transaction. As of the Closing, the transfer of the Purchased Assets to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets, including the Purchased Contracts, and will vest the Purchaser with all right, title and interest of the Debtors in and to the Purchased Assets free and clear of all Liens. The Debtors have full corporate or other applicable authority to execute the Birch Run APA and all other documents contemplated thereby, and the Sale Transaction has been duly and validly authorized by all necessary corporate action of the Debtors. Upon entry of this Order, other than any consents identified in the Birch Run APA, no consent or approval from any other person, entity or legal authority is required to consummate the Sale Transaction.

X.      No *Sub Rosa* Plan. Neither the Sale Transaction nor the Birch Run APA impermissibly restructures the rights of any of the Debtors' creditors or impermissibly dictates the terms of a liquidating plan of reorganization of the Debtors. Neither the Sale Transaction nor the Birch Run APA constitutes a *sub rosa* or *de facto* plan of reorganization or liquidation, as neither proposes to (i) impair or restructure any existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors; (iii) circumvent chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests or extend debt maturities.

Y.      Fair Purchase Price. The total consideration provided by the Purchaser for the Purchased Assets constitutes (a) reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Action; (b) fair

-17-

consideration under the Uniform Fraudulent Conveyance Act; and (c) reasonably equivalent value, entirely fair consideration, and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia.  The Sale Transaction and the Purchase Price were negotiated in good faith and are fair and the product of good faith negotiations among the parties.

Z.    Time is of the essence to implement the Birch Run APA and consummate the Sale Transaction.  The Sale Transaction must be approved and consummated promptly in order to preserve the value of the Purchased Assets and to ensure the Debtors' compliance with their obligations under their post-petition financing agreements.    The Debtors have demonstrated compelling circumstances and sound business justifications for the immediate approval and consummation of the Sale Transaction as contemplated by the Birch Run APA. Notwithstanding the provisions of Bankruptcy Rules 6004(h), 6006(d), 7062 or any applicable provisions of the Local Rules, this Order shall not be stayed and shall be effective and enforceable immediately upon entry.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    <u>Sale Motion Granted</u>.  The Sale Motion and the relief requested therein (to the extent not previously granted by the Court pursuant to the Bidding Procedures Order or otherwise) are **GRANTED** and approved as set forth herein and the Sale Transaction is hereby approved, subject to the terms and conditions contained herein and in the Birch Run APA.

2.    <u>Objections Overruled</u>.  Any objections responses, reservations of rights, and requests for continuance concerning approval of the Sale Transaction, if any, are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing.  To the extent any such objection, response, reservation of rights, or request for continuance was not

-18-

otherwise withdrawn, waived, or settled, it is overruled and denied on the merits with prejudice. All objections to the entry of this Order or to the relief granted herein that were not timely filed are hereby forever barred.

3.      Approval of the Sale Transaction.  The sale of the Purchased Assets to the Purchaser, the terms and conditions of the Birch Run APA (including all schedules, exhibits and ancillary agreements affixed or related thereto), and the Sale Transaction contemplated thereby are hereby authorized and approved in all respects and shall be enforceable against each of the parties thereto.  The Debtors have satisfied all requirements of sections 363(b), 363(f), and 365 of the Bankruptcy Code, and all other requirements and standards applicable to a sale outside the ordinary course of business, free and clear of the Liens, Claims, and Interests.

4.      Failure to specifically include any particular provision of the Birch Run APA or any of the documents, ancillary documents, or instruments executed in connection therewith in this Order shall not diminish or impair the force of such provision, document, Birch Run APA, or instrument, it being the intent of the Court, the Debtors, and the Purchaser, that the Birch Run APA and each document, ancillary document, or instrument be authorized and approved in its entirety with such amendments thereto as may be made by the parties in accordance with this Order, and each such provision shall be enforceable by or against each of the parties thereto.

5.      Notice.  Notice of the Sale Hearing, including as set forth in the Sale Notice and the Assumption and Assignment Notice, was fair, equitable, proper, and sufficient under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, 6004, and 6006, the Local Rules, and as required by the Bidding Procedures Order.

6.      <u>Fair Purchase Price</u>.   The sale of the Purchased Assets and the consideration provided by the Purchaser under the Birch Run APA are entirely fair and reasonable, the highest or otherwise best offer for the Purchased Assets, and were the result of a fair bidding process and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law. The sale of the Purchased Assets to the Purchaser is a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent of any person or entity.

7.      The Purchaser is hereby granted, and is entitled to, all the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code, including with respect to the transfer of the Purchased Contracts as part of the sale of the Purchased Assets pursuant to section 365 of the Bankruptcy Code and this Order.

8.      <u>Consummation of Sale Transaction</u>.   The Debtors and their employees, professional advisors, and agents shall be, and hereby are, authorized and directed to fully assume, consummate, and implement the terms of the Birch Run APA, together with any and all additional instruments and documents that may be necessary or desirable in connection with implementing and effectuating the terms of the Birch Run APA, this Order, and/or the sale of the Purchased Assets, including, without limitation, the certificates, deeds, assignments, and other instruments of transfer, and to take all further actions (i) as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser, or reducing to possession, any or all of the Purchased Assets, Assumed Liabilities, or Permitted Exceptions or (ii) as may be necessary or appropriate to the performance of the obligations of the Debtors' estates in accordance with, or as contemplated by, the Birch Run APA,

RLF1 31552609v.1

without any further corporate action or orders of this Court.

9.      The Debtors and each other person or entity having duties or responsibilities under the Birch Run APA, any agreements or instruments related thereto or this Order, and their respective directors, officers, managers, employees, members, agents, representatives, attorneys, and other retained professionals are authorized and empowered, subject to the terms and conditions contained in the Birch Run APA and this Order, to carry out all of the provisions of the Birch Run APA and any related agreements or instruments; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Birch Run APA and any related agreements or instruments; to take any and all actions contemplated by the Birch Run APA, any related agreements or instruments, or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and necessary, desirable or appropriate to implement, effectuate, and consummate, the Birch Run APA, any related agreements or instruments, and this Order and the Sale Transaction contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, managers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, managers, employees, members, agents, representatives, and attorneys of such entities.  The Debtors and the Purchaser are further authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable Governmental Body (as defined in the Birch Run APA) any and all certificates, agreements, or amendments necessary or appropriate to effectuate the Sale

Transaction, any related agreements and this Order, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Bodies or as the Debtors may determine are necessary or appropriate. The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporate laws of the states of formation of each corporate Debtor and all other applicable business, corporation, trust, and other laws of the applicable Governmental Bodies with respect to the implementation and consummation of the Birch Run APA, any related agreements or instruments and this Order, and the Sale Transaction contemplated thereby and hereby.

10.     Each and every federal, state, and local governmental agency or department is authorized to accept any and all documents and instruments necessary and appropriate to consummate the Sale Transaction contemplated by the Birch Run APA and this Order.  This Order and the Birch Run APA shall be binding upon, and govern the acts of all such federal, state, and local governmental agencies and departments, including any filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in, or to, the Purchased Assets.

11.     To the extent provided by section 525 of the Bankruptcy Code, no Governmental Body may deny, revoke, suspend, or refuse to renew any permit, license, registration, operating permit, governmental authorization or approval or similar grant, including, without limitation, those approvals listed on Exhibit 2 hereto (each, an "Approval") relating to

-22-

the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account

of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale Transaction

contemplated by the Birch Run APA.  To the maximum extent available under applicable law

and to the extent provided for under the Birch Run APA, the Purchaser shall be authorized, as of

the Closing, to operate under any Approval of the Debtors with respect to the Purchased Assets

and, to the maximum extent available under applicable law, and to the extent provided for under

the Birch Run APA and related documents, all such Approvals are deemed to have been, and are

hereby directed to be, transferred to the Purchaser as of the Closing.  All existing Approvals

applicable to the business shall remain in place and, as applicable, shall be deemed renewed, for

the Purchaser's benefit until either new Approvals are obtained or existing Approvals are

transferred in accordance with applicable administrative procedures.  For the avoidance of doubt,

pursuant to section 2.8 of the Birch Run APA, the Debtors shall reasonably cooperate with the

Purchaser (at no cost or expense to the Debtors or cost or expense which the Purchaser agrees in

writing to reimburse) prior to Closing in connection with the Purchaser's efforts to transfer or

obtain new Approvals.

       12.     Except as otherwise expressly provided in the Birch Run APA, all persons

presently on or after the Closing Date in possession of some or all of the Purchased Assets are

directed to surrender possession of the Purchased Assets to the Purchaser, as applicable, on the

Closing Date or at such time thereafter as the Purchaser may request.  For the avoidance of doubt,

all persons and entities are prohibited and enjoined from taking any action to adversely affect or

interfere with the ability of the Debtors to transfer the Purchased Assets to the Purchaser in

accordance with the Birch Run APA and this Order.

       13.     <u>Transfer of Assets Free and Clear</u>.  To the fullest extent permitted by law,

effective as of the Closing, (a) the assumption of the Assumed Liabilities and Permitted Exceptions shall constitute a legal, valid, and effective assumption by the Purchaser of all Assumed Liabilities and Permitted Exceptions and (b) the transfer of the Purchased Assets to the Purchaser, shall constitute a legal, valid, and effective transfer of the Purchased Assets notwithstanding any requirement for approval or consent by any person. The Debtors are authorized to transfer, and upon the Closing shall transfer to the Purchaser, all of the Debtors' right, title, and interest in and to, and possession of, the Purchased Assets, which shall be immediately vested in the Purchaser, and such title to the Purchased Assets, including, without limitation, with respect to the Purchased Intellectual Property (as defined in the Birch Run APA) or any instrument relating thereto and all tangible and intangible assets, personal property, goodwill, brand and related likenesses constituting Purchased Assets, shall be transferred to the Purchaser free and clear of the Liens, Claims, and Interests pursuant to section 363(f) of the Bankruptcy Code, including, without limitation:

(a)     liens (including, without limitation, mechanics', materialmens', and other consensual and non-consensual liens and statutory liens) mortgages, restrictions, hypothecations, charges of any kind or nature, indentures, loan agreements, instruments, leases, subleases, capital leases, encroachments, licenses, burdens, options, privileges, deeds of trust, security interests, equity interests, conditional sale or other title retention agreements, covenants, pledges, judgments, demands, guarantees, encumbrances, easements, defects in title, servitudes, regulatory violations by any Governmental Body, decrees of any court or foreign or domestic Governmental Body, and debts arising in any way in connection with any agreements, acts, or failures to act;

(b)     interests, obligations, liabilities, demands, guaranties, options, restrictions, and contractual or other commitments;

(c)     rights, including, without limitation, rights of first refusal, rights of offset (except for offsets exercised prior to the Petition Date (as defined in the Sale Motion)), rights of setoff, recoupment rights, rights of way, contract rights, subrogation rights, exoneration rights, labor rights, equitable rights, employment rights, pension rights, and rights of recovery;

(d)      decrees of any court or foreign or domestic government entity (to the extent permitted by law);

(e)      charges or restrictions of any kind or nature, including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets, including, without limitation, consent of any Person to assign or transfer any of the Purchased Assets;

(f)      debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or any of the Debtors' predecessors or Affiliates;

(g)      claims (as that term is defined in the Bankruptcy Code), including claims for reimbursement, contribution claims, indemnity claims, subrogation claims, exoneration claims, alter-ego claims, products liability claims, environmental claims (including, without limitation, toxic tort claims), labor claims, pension claims, equitable claims, including claims that may be secured or entitled to priority under the Bankruptcy Code, tax claims, reclamation claims, adverse claims of any kind, and pending litigation claims;

(h)      matters of any kind or nature whatsoever, whether at law or in equity and whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or nonmaterial, disputed or undisputed, whether arising prior to or during the Debtors' bankruptcy cases, and whether imposed by agreement, understanding, law, equity, or otherwise, including claims otherwise arising under any theory, law, or doctrine of successor liability or related theories;

in each case, whether in law or in equity, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, direct or indirect, and whether arising by agreement, understanding, law, equity or otherwise, including claims otherwise arising under any theory, law, or doctrine of successor liability or related theories, and whether occurring or arising before, on or after the Petition Date, or occurring or arising prior to the Closing (each, a "Lien, Claim, or Interest" and, collectively, the "Liens, Claims, and Interests", provided,

-25-

however, the term "Liens, Claims, and Interests" shall specifically exclude Assumed Liabilities and Permitted Exceptions).  The Liens (other than Assumed Liabilities and Permitted Exceptions), Claims, and Interests shall attach to the proceeds of the sale (if any) with the same nature, validity, priority, extent, perfection, and force and effect that such Liens, Claims, and Interests encumbered the Purchased Assets immediately prior to the entry of this Order, subject to any Claims, defenses, and objections, if any, that the Debtors or their estates may possess with respect thereto.

14.     Following the Closing Date, no holder of any Liens, Claims, or Interests in the Purchased Assets shall interfere with the Purchaser's enjoyment of the Purchased Assets based on or related to such Liens, Claims, or Interests, or any actions that the Debtors may take in these Chapter 11 Cases and no person shall take any action to prevent, interfere with, hinder, or otherwise delay consummation of the Sale Transaction contemplated by the Birch Run APA or this Order.

15.     The provisions of this Order authorizing the sale of the Purchased Assets free and clear of any Liens, Claims, and Interests shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or any other instruments to effectuate, consummate, and implement the provisions of this Order.  However, the Debtors, the Purchaser, and each of their respective officers, employees, attorneys, other retained professionals, and agents are hereby authorized and empowered to take all actions and execute and deliver any and all documents, releases, terminations, and instruments that either the Debtors or the Purchaser deem necessary, desirable, or appropriate to implement and effectuate the terms of the Birch Run APA and this Order, including amendments to the Birch Run APA and the release of Liens, Claims, and Interests as set forth in this Order.

16.     <u>General Assignment</u>.   The Purchased Assets to be acquired by the Purchaser under the Birch Run APA shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to, and vested in, the Purchaser.  Upon the occurrence of the Closing, this Order shall be considered, and shall constitute, for any and all purposes a full and complete general assignment, conveyance, and transfer of the Debtors' interest in the Purchased Assets under the Birch Run APA and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Purchased Assets to the Purchaser.

17.     <u>Release of Interests</u>.   On or before the Closing Date, each of the Debtors' creditors are authorized to execute such documents, releases, or terminations, and take all other actions as may be necessary, desirable, or appropriate to release, effective as of the Closing, their respective Liens, Claims, and Interests of any kind against the Purchased Assets, as such Liens, Claims, and Interests may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, or other documents or agreements evidencing any Liens, Claims, or Interests against or on the Purchased Assets shall not have delivered to the Debtors on or prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all liens and easements, and any other documents necessary, desirable, or appropriate for the purpose of documenting the release of all Liens, Claims, or Interests that the person or entity has or may assert with respect to the Purchased Assets, the Debtors and the Purchaser are hereby authorized to execute and file such statements, instruments, releases, terminations, and other documents on behalf of the person or entity with respect to the Purchased Assets.  The Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the

release of all Liens, Claims, or Interests against the Purchased Assets. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department, or office.

18.     This Order:  (i) constitutes a determination that, as of the Closing, all Liens, Claims, and Interests, except as expressly assumed as an Assumed Liability or Permitted Exception by the Purchaser pursuant to the express terms of the Birch Run APA, have been unconditionally released, discharged, and terminated as to the Purchaser and the Purchased Assets owned by the Debtors and that the conveyances and transfers described herein have been effected, and (ii) is and shall be binding upon and govern the acts of all persons, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, Governmental Bodies or departments, secretaries of state, federal, state, county, and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Purchased Assets, and ownership of the Purchased Assets owned by the Debtors is free and clear of any Liens, Claims, and Interests or who may be required to report or insure any title or state of title in or to any lease (all such entities being referred to as "Recording Officers").  All Recording Officers are authorized to strike recorded encumbrances and other interests against the Purchased Assets owned by the Debtors recorded prior to the date of this Order.  A certified copy of this Order may be filed with the appropriate Recording Officers to evidence cancellation of any recorded encumbrances, Liens, Claims, and Interests against the Purchased Assets owned by the Debtors recorded prior to the date of this Order.  All Recording Officers are hereby authorized to accept for filing any and all of the documents and instruments necessary, advisable or

appropriate, and appropriate to consummate the Sale Transaction.

19.     The Purchaser shall be authorized, as of the Closing Date, to operate under any Approvals, and to the greatest extent available under applicable law, all such Approvals are deemed to have been, and hereby are, deemed to be transferred to the Purchaser, as of the Closing Date.  Furthermore, the Purchaser is authorized to continue operating the business for or in which the Debtors utilized the Purchased Assets under all existing Approvals until such Approvals have been changed to the name of the Purchaser.

20.     Kunde Easements.  Notwithstanding anything in this Order or the Birch Run APA to the contrary, the Purchaser and Debtors acknowledge that the Purchaser acquires Kunde Family Winery subject to the easements by and among Kunde Enterprises, Inc. and Arthur Kunde & Sons, Inc., et al. (the "Kunde Easements"); provided, that, for the avoidance of doubt, nothing in this Order creates, revives, reinstates, or expands the rights of the non-Debtor parties to the Kunde Easements.

21.     Assumption and Assignment of Purchased Contracts.  Subject to the terms of the Birch Run APA and the occurrence of the Closing Date, the assumption by the Debtors of the Purchased Contracts, as provided for or contemplated by the Birch Run APA and the Assumption and Assignment Notice, shall be, and hereby is, authorized and approved pursuant to sections 363 and 365 of the Bankruptcy Code.

22.     The Purchased Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and assigned to the Purchaser at the Closing, pursuant to sections 363 and 365 of the Bankruptcy Code, subject only to the payment of the Cure Costs (if any) solely to the extent set forth in the Assumption and Assignment Notice and in accordance with the terms of the Birch Run APA.

23.     The Debtors and the Purchaser have satisfied all requirements under sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code to provide adequate assurance of future performance under all of the Purchased Contracts.  No other or further notice of, opportunity to object to, or other opportunity to be heard regarding the Assumption and Assignment Notice or the assumption and assignment of the Purchased Contracts is necessary or shall be required.

24.     Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest in, and to, each of the Purchased Contracts.

25.     Pursuant to sections 365(b)(l)(A) and (B) of the Bankruptcy Code, and except as otherwise provided in this Order, on the Closing Date, the Purchaser shall pay or cause to be paid to the Non-Debtor Counterparties the requisite Cure Costs, if any, set forth on the Assumption and Assignment Notice, except to the extent that (i) a Cure Cost was amended on the record of the Sale Hearing; (ii) a different Cure Cost is agreed as between the Non-Debtor Counterparties and the Debtors; or (iii) as to be determined by Court order.  Except as otherwise set forth in this Order, the Cure Costs (if any) are binding on all Non-Debtor Counterparties and are hereby fixed at the amounts (including any amount listed as $0.00) set forth on the Assumption and Assignment Notice and shall not be subject to any challenge or objection by any party.  Except as set forth in this Order, the Non-Debtor Counterparties are forever barred from asserting any other claims, including, but not limited to, the propriety or effectiveness of the assumption and assignment of the Purchased Contracts against the Debtors, the Purchaser, or the property of any of them in respect of the Purchased Contracts.  Except as set forth in this Order, all of the Non-Debtor Counterparties shall be fully and finally bound by the Cure Costs listed on the Assumption and Assignment Notice and any challenge to any Cure Cost is hereby deemed

waived and released.

26.    Any party to a personal services contract that has not objected to the assignment thereof is deemed to consent to such assignment pursuant to section 365(c) of the Bankruptcy Code to the extent that such contract is a Purchased Contract.

27.    Any provision in any Purchased Contract that purports to declare a breach, default, or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Purchased Contracts shall remain in full force and effect, subject only to payment of the appropriate Cure Costs, if any.  No sections or provisions of any Purchased Contract that purport to provide for additional payments, profit sharing, penalties, conditions, renewals, extensions, charges, or other financial accommodations in favor of the Non-Debtor Counterparties, or modification of any term or condition upon the assignment of a Purchased Contract, shall have any force or effect with respect to the Sale and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under section 365(f) of the Bankruptcy Code and/or are otherwise unenforceable under section 365(e) of the Bankruptcy Code and no assignment of any Purchased Contract pursuant to the terms of the Birch Run APA shall in any respect constitute a default under any Purchased Contract.

28.    Each and every provision of the Purchased Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Purchased Contract has been or will be satisfied or is otherwise unenforceable under section 365 of the Bankruptcy Code.  All counterparties of the Purchased Contracts that did not or do not timely file an objection to the assumption and/or assignment of the Purchased Contract(s) to which they are a counterparty are deemed to consent to the assumption and/or assignment by the Debtors of their Purchased

-31-

Contract(s) to the Purchaser, and the Purchaser shall enjoy all of the rights and benefits under each such Purchased Contract as of the applicable date of assumption and/or assignment without the necessity of obtaining such non-debtor party's consent to the assumption or assignment thereof. All counterparties of the Purchased Contracts for which the deadline to file an objection to the assumption and assignment or Cure Cost has passed as of the date of entry of this Order, and that did not timely file such an objection prior to the applicable deadline, shall be deemed to consent to the assumption and/or assignment by the Debtors of their Purchased Contract to the Purchaser effective as of the Closing Date, and the Purchaser shall enjoy all of the rights and benefits under each such Purchased Contract as of the applicable date of assumption and/or assignment without the necessity of obtaining such non-debtor party's consent to the assumption or assignment thereof. Upon the assignment and sale to the Purchaser in accordance with the terms of the Birch Run APA, the Purchased Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order, and shall be assigned and transferred to the Purchaser, notwithstanding any provision in the Purchased Contracts prohibiting or otherwise restricting assignment or transfer, and the Debtors, their estates, or any of their Affiliates, predecessors, successors, or assigns, shall have no further liability or obligation under the Purchased Contracts. To the extent any Purchased Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Purchaser in accordance with the terms of the Birch Run APA and, other than with respect to Assumed Liabilities and Permitted Exceptions, the Purchaser shall have no liability or obligation for any (i) defaults or breaches under such agreement that relate to acts or omissions that arose or occurred prior to the Closing Date and (ii) claims, counterclaims, offsets, or defenses (whether contractual or otherwise, including, any right of recoupment) with respect

to such Purchased Contract, that relate to any acts or omissions that arose or occurred prior to the Closing Date.

29.    By mutual consent of the applicable counterparties, the contracts identified on Exhibit 3 hereto will be assumed by the Debtors and assigned to the Purchaser subject to the terms of the Birch Run APA.

30.    All defaults or other obligations under the Purchased Contracts arising prior to the Closing Date (without giving effect to any acceleration clauses, assignment fees, increases, advertising rates, or any other default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be deemed cured by entry of this Order, or as applicable, payment of the Cure Costs (if any) on the Assumption and Assignment Notice, and the counterparties to the Purchased Contracts shall be forever barred and estopped from asserting or claiming against the Debtors or the Purchaser that any amounts are due or other defaults exist under such Purchased Contract as of the date of the assignment of such Purchased Contract.

31.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all parties to the Purchased Contracts shall have no claims against the Purchaser relating to any assignment fee, Cure Costs, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Purchased Contracts existing as of the Closing Date or arising by reason of the Closing Date, except for any amounts that are Assumed Liabilities and Permitted Exceptions.

32.    Notwithstanding anything to the contrary in this Order, in the event that the Sale Transaction does not close, none of the Purchased Contracts shall be assumed by virtue of this Order and shall remain subject to further administration in these Chapter 11 Cases.

33.    No Successor or Other Derivative Liability.  Neither the Purchaser, nor its

Affiliates, predecessors, successors, assigns, members, partners, officers, directors, and principals and shareholders (or the equivalent thereof) is a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability, or similar liability. Neither the transfer of the Purchased Assets to the Purchaser, nor the fact that the Purchaser is using any of the Purchased Assets previously owned by the Debtors, will cause the Purchaser or any of its Affiliates, to be deemed a successor in any respect to the Debtors' business or an alter ego, common identity, mere continuation, or substantial continuation of the Debtors within the meaning of any foreign, federal, state or local revenue, pension, ERISA, the WARN Act (as defined below), tax, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

34.     Further, the transfer of title and possession of the Purchased Assets shall be free and clear of any Liens, Claims, and Interests pursuant to any successor or successor-in-interest liability theory, and, for the avoidance of doubt, the Purchaser, and each of its Affiliates, predecessors, successors, assigns, members, partners, officers, directors, and principals and shareholders (or the equivalent thereof) shall have no liability whatsoever for any Liens, Claims, and Interests, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether liquidated or unliquidated, whether asserted derivatively or vicariously, whether asserted based on the Purchaser's status as a transferee, successor, or otherwise, of any kind, nature, or character whatsoever, including Liens, Claims, and Interests

based on, relating to, and/or arising under, without limitation: (i) any employment or labor agreement; (ii) any pension, welfare, compensation or other employee plan, agreements, practices, and programs, including, without limitation, any pension or employee plan of, or related to, any of the Debtors or any Debtors' Affiliates or predecessors or any current or former employees of any of the foregoing; (iii) the Debtors' business operations or the cessation thereof; (iv) any litigation involving one or more of the Debtors; (v) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, any claims, rights, or causes of action that might arise under or pursuant to: (a) the Employee Retirement Income Security Act of 1974, as amended, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Notification Act of 1988 (the "WARN Act"), (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) the Multiemployer Pension Plan Amendments Act of 1980; (k) state and local discrimination laws, (l) state and local unemployment compensation laws or any other similar state and local laws, (m) state workers' compensation laws, and/or (n) any other state, local, or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment, or termination of employment with any or all Debtors or any of their predecessors; (vi) any antitrust laws; (vii) any product liability or similar laws, whether state, federal, or otherwise; (viii) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (ix) Perishable Agricultural

-35-

Commodities Act; (x) any bulk sales or similar laws; (xi) any federal, state, or local tax statutes, rules, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (xii) any common law doctrine of *de facto* merger, successor, transferee, or vicarious liability, substantial continuity liability, successor-in-interest liability theory, and/or any other theory of or related to successor liability.

35.    Other than the Assumed Liabilities and Permitted Exceptions the Purchaser has expressly agreed to assume pursuant to the express terms of the Birch Run APA, the Purchaser is not assuming nor shall it or any Affiliate of the Purchaser be in any way liable or responsible, as a successor or otherwise, for any Liabilities (as defined in the Birch Run APA) of the Debtors in any way whatsoever, including any Liabilities relating to or arising from the Debtors' ownership or use of the Purchased Assets prior to the Closing Date, or any Liabilities calculable by reference to the Debtors or their operations or the Purchased Assets, or relating to continuing or other conditions existing on or prior to the Closing Date, which Liabilities are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against the Purchaser or any Affiliate of the Purchaser.

36.    <u>Injunction</u>.  Except as otherwise provided in the Birch Run APA, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons, including, but not limited to, the Debtors, all debt holders, equity security holders, the Debtors' employees or former employees, Governmental Bodies, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors, or any other person or entity asserting or holding a Lien, Claim, or Interest of any kind or nature whatsoever against, in, or with respect to any of the Debtors or the Purchased Assets, arising under or out of, in connection with, or in any way relating to the Debtors, the Purchased Assets, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the

Purchased Assets to the Purchaser in accordance with the Birch Run APA and this Order, shall be forever barred and estopped from asserting, commencing, prosecuting, continuing, or otherwise pursuing, whether in law or equity, in any judicial, administrative, arbitral, or other proceeding, such Lien, Claim, or Interest, including, without limitation, assertion of any right of setoff or subrogation, and enforcement, attachment, or collection of any judgment, award, decree, or order, against the Purchaser or any Affiliates, successors or assigns thereof and each of their respective current and former members, officers, directors, attorneys, employees, partners, equity holders, beneficiaries, Affiliates, financial advisors, and representatives (each of the foregoing in its individual capacity), with respect to the Purchased Assets.

37.    Without limiting the generality of the foregoing, the Purchaser shall not assume or be obligated to pay, perform, or otherwise be liable for any workers' compensation Liabilities of the Debtors arising pursuant to state law or otherwise, and this Order is intended to be all inclusive and shall encompass, but not be limited to, workers' compensation Claims or suits of any type, whether now known or unknown, whenever incurred or filed, which have occurred or which arise from work-related injuries, diseases, death, exposures, intentional torts, acts of discrimination, or other incidents, acts, or injuries prior to the Closing Date, including, but not limited to, any and all workers' compensation Claims filed or to be filed, or any reopening of such Claims, by or on behalf of any of the Debtors' current or former employees, persons on laid-off, inactive or retired status, or their respective dependents, heirs or assigns, as well as any and all premiums, assessments, or other obligations of any nature whatsoever of the Debtors relating in any way to workers' compensation liability.

38.    The Purchaser has not assumed, or is otherwise not obligated for, any of the Debtors' liabilities other than with respect to Assumed Liabilities and Permitted Exceptions,

and the Purchaser has not purchased any of the Debtors' assets expressly excluded from the Purchased Assets.  Consequently, all Persons (as defined in section 101(41) of the Bankruptcy Code), Governmental Bodies, and all holders of Liens, Claims, and Interests based upon or arising out of liabilities retained by the Debtors may not take any action against the Purchaser or the Purchased Assets to recover on account of any liabilities of the Debtors.  All persons holding or asserting any Liens, Claims, or Interests in the Excluded Assets may not assert or prosecute such Liens or any cause of action against the Purchaser or the Purchased Assets for any liability associated with the Excluded Assets or any other Excluded Liability (as defined in the Birch Run APA).

39.     Transfer Taxes.  Any Liens, Claims, and Interests of any kind asserted under laws, rules, regulations or governmental or court orders imposing a stamp, transfer tax, or similar tax arising from the transfer of the Purchased Assets to the Purchaser shall be filed against the Debtors' estates and shall not be asserted against the Purchaser.  Pursuant to sections 105(a) and 363 of the Bankruptcy Code, all Persons and Governmental Bodies are hereby enjoined from taking any action against the Purchaser to recover any claim which such Person or Governmental Body has or may assert against the Debtors (as such claims exist immediately prior to the Closing) relating to a stamp, transfer tax, or similar tax arising from the transfer of the Purchased Assets to the Purchaser.

40.     Bulk Sales.  No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction contemplated by the Birch Run APA.

41.     Modification of Birch Run APA.  Subject to the terms of the Birch Run APA, the Birch Run APA and any related agreements and/or instruments may be waived, modified, amended, or supplemented by agreement of the Debtors and the Purchaser, without

-38-

further action or order of the Court.

42.    <u>Binding Effect</u>.  This Order and the Birch Run APA shall be binding on and inure to the benefit of all successors and assigns of the Debtors and the Purchaser.  This Order and the Birch Run APA shall be binding upon, enforceable against, and govern the acts of all persons including, without limitation, the Debtors and their estates, the Purchaser and its respective successors and permitted assigns, any chapter 11 trustee hereinafter appointed for the Debtors' estates, any committee appointed in these Chapter 11 Cases, or any trustee appointed in a chapter 7 case if any of the Chapter 11 Cases is converted from a case under chapter 11 to a case under chapter 7 of the Bankruptcy Code, all creditors of, and holders of equity interests in, any Debtor (whether known or unknown), all Non-Debtor Counterparties, the holders of the Liens, Claims, and Interests in, against, or on one or more of the Purchased Assets, filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Purchased Assets.

43.    <u>Conflicts; Precedence</u>.  Nothing in any order of this Court or contained in any plan of reorganization or liquidation that may be confirmed in the cases of the Debtors, or in any subsequent or converted cases of the Debtors to cases under chapter 7 of the Bankruptcy Code, shall conflict with, or derogate from, the provisions of the Birch Run APA or the terms of this Order.  In the event there is any inconsistency between the Sale Motion, the Bidding Procedures Order, the Bidding Procedures, the Birch Run APA, or this Order, this Order shall govern in all respects.

44.    <u>No Avoidance of Sale</u>.  Neither the Sale Transaction nor the Birch Run

RLF1 31552609v.1

APA shall be subject to rejection or avoidance under any circumstances. Neither the Debtors nor the Purchaser has engaged in any conduct that would cause or permit the Birch Run APA to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. Accordingly, the sale of the Purchased Assets is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

45.    <u>Further Assurances</u>.  From time to time, as and when requested, all parties to the Sale Transaction shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other action as the requesting party may reasonably deem necessary or desirable to consummate the Sale Transaction contemplated by the Birch Run APA, including, without limitation, such actions as may be necessary to vest, perfect, confirm, record, or otherwise in the Purchaser its right, title, and interest in and to the Purchased Assets and the Purchased Contracts.

46.    <u>Statutory Mootness</u>.  Notwithstanding Bankruptcy Rules 6004, 6006, and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the Birch Run APA at any time, subject to the express terms of the Birch Run APA.  In the absence of any person obtaining a stay pending appeal, if the Debtors and the Purchaser close under the Birch Run APA, the Debtors and the Purchaser shall be deemed to be acting in "good faith" and the Purchaser shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the Sale Transaction contemplated by the Birch Run APA if this Order or any authorization contained herein is reversed or modified on appeal.

47.    <u>Waiver of Bankruptcy Rules 6004 and 6006</u>.  Notwithstanding the

-40-

provisions of Bankruptcy Rules 6004(h), 6006(d), 7062, or any applicable provisions of the Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the 14-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Sale Transaction and the Debtors and the Purchaser intend to close the Sale Transaction as soon as practicable.

48.    <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Birch Run APA in all respects and to decide any disputes concerning this Order, the Birch Run APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Birch Run APA and this Order including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Purchased Contracts, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Purchased Assets free and clear of any Liens, Claims, and Interests and any actions, efforts, and/or conduct that has interfered or would interfere with the Purchaser's possession or use of the Purchased Assets, including any and all tangible and intangible assets, personal property, goodwill, brand, and related likenesses acquired under the Birch Run APA.

49.    <u>General Provisions</u>.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

50.    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary, without further order of the Court, to allow the Purchaser to deliver any notice provided for in the Birch Run APA and to take any and all actions

-41-

permitted or required under the Birch Run APA to implement the terms and conditions thereof and the provisions of this Order.

51.     Neither the Purchaser nor the Debtors shall have an obligation to close the Sale Transaction until all conditions precedent in the Birch Run APA to each of their respective obligations to close the Sale Transaction have been satisfied or waived in accordance with the terms of the Birch Run APA.

52.     The provisions of this Order are non-severable and mutually dependent.

Dated: September 25th, 2024
Wilmington, Delaware

MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE

RLF1 31552609v.1