**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Meier's Wine Cellars Acquisition, LLC, et al.[1]<br><br>　　　　　　　Debtors. | Chapter 11<br><br>Case No. 24-11575 (MFW)<br><br>(Jointly Administered)<br><br>Re: Docket No. 431 |

**DECLARATION OF PETER DEUTSCH ON BEHALF OF DFG REAL ESTATE, LLC, SUCCESSFUL BIDDER FOR CERTAIN ASSETS OF THE DEBTORS, IN SUPPORT OF SUCH SALE**

I, Peter Deutsch, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct to the best of my knowledge and belief:

1.　　I am the Manager of DFG Real Estate, LLC (the "Purchaser"). I am authorized to make this Declaration in support of the Bankruptcy Court's approval of the *Stalking Horse Asset Purchase Agreement* dated as of October 8, 2024, by and among Purchaser as purchaser, W.J. Deutsch & Sons Ltd. d/b/a Deutsch Family Wine & Spirits ("DFWS") as guarantor, and Debtors Vintage Wine Estates, Inc., a Nevada corporation and Vintage Wine Estates, Inc., a California corporation (together, the "Sellers") as sellers (as amended, and with all exhibits, schedules and supplements thereto, the "Asset Purchase Agreement"),[2] a copy of which is filed at Docket No. 431-3, and entry of the Sale Order and the findings set forth in the Sale Order.

---

[1] The Debtors are the following eleven entities (the last four digits of their respective taxpayer identification numbers, if any, follow in parentheses): Meier's Wine Cellars Acquisition, LLC (5557); California Cider Co., Inc. (0443); Girard Winery LLC (5076); Grove Acquisition, LLC (9465); Meier's Wine Cellars, Inc. (2300); Mildara Blass Inc. (1491); Sabotage Wine Company, LLC (8393); Thames America Trading Company Ltd. (0696); Vinesse, LLC (3139); Vintage Wine Estates, Inc. (CA) (2279); and Vintage Wine Estates, Inc. (NV) (5902). The Debtors' noticing address in these chapter 11 cases is 205 Concourse Boulevard, Santa Rosa, California 95403.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed in the Asset Purchase Agreement.

2.      I have been involved in all aspects of the diligence and consideration of the transaction contemplated by the Asset Purchase Agreement. Unless otherwise stated herein, I have personal knowledge of the facts set forth in this Declaration.

3.      Prior to the commencement of these Chapter 11 Cases, there was an exploration of a potential acquisition of certain assets of the Debtors as described more fully in the Asset Purchase Agreement.

4.      Following July 24, 2024 (the "Petition Date"), diligence and negotiations continued between the parties regarding the terms of the sale of the Purchased Assets.

5.      On October 8, 2024, the Debtors moved pursuant to the Bidding Procedures Order to designate the Purchaser as a "stalking horse bidder" for the Purchased Assets, on the terms set forth in the Asset Purchase Agreement.

6.      On October 15, 2024, the Court entered the *Order (i) Authorizing the Debtors to Enter into the DFWS Stalking Horse Agreement and Provide Bidding Protections Thereunder in Accordance with the Bidding Procedures and (ii) Granting Related Relief* [Docket No. 456].

7.      On October 17, 2024, the Debtors informed the Purchaser that no other qualified bids were received for the Purchased Assets and that the Purchaser's bid for them would be declared the "successful bid."

**Good Faith**

8.      The Purchaser has and will continue to conduct diligence on the Purchased Assets and to negotiate with the Debtors regarding the ancillary documents within the Asset Purchase Agreement to allow the Purchaser to adequately prepare for owning and otherwise utilizing the Purchased Assets following the Closing.

2

9. The Debtors and the Purchaser were each represented by separate and independent advisors throughout the negotiation of the terms of the Asset Purchase Agreement. Purchaser utilized the firms of Norton Rose Fulbright US LLP, ArentFox Schiff LLP, Dickenson Peatman & Fogarty P.C., and Chipman Brown Cicero & Cole, LLP to provide legal counsel, and FTI Consulting to provide business and financial advice regarding the transaction contemplated by the Asset Purchase Agreement. The Purchaser and its professional advisors regularly communicated with the Debtors' professional advisors, including its legal counsel, Jones Day, and its investment banker, GLC Advisors & Co., LLC, throughout this process.

10. The Asset Purchase Agreement was negotiated and entered into in good faith, based upon arm's-length bargaining, and without collusion or fraud of any kind. Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of, or implicate, section 363(n) of the Bankruptcy Code to the Asset Purchase Agreement, or to the consummation of the Sale Transaction contemplated thereby, and the transfer of the Purchased Assets to the Purchaser. The Purchaser is purchasing the Purchased Assets in good faith and is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and is, therefore, entitled to the protection of that provision, and otherwise has proceeded in good faith in all respects in connection with these cases, the Sale Transaction, and post-closing ownership of the Purchased Assets.

11. I certify that: (i) the Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Purchaser fully complied with all of the provisions of the Bankruptcy Code, the Bidding Procedures Order and the Bidding Procedures; (iii) there was no fraud, collusion, or unfair dealing in connection with the

Purchaser's bid, the Asset Purchase Agreement, the bidding process, or in any part of the sale of the Purchased Assets or related agreements; (iv) the Purchaser has fully disclosed all of its connections with the Debtors; (v) all consideration to be paid or provided to the Debtors by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the sale have been disclosed; (vi) the Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and (vii) the negotiations and execution of the Asset Purchase Agreement and any other agreements or instruments related thereto were in good faith and free from any collusion, fraud or unfair dealing.

12. The Asset Purchase Agreement was not entered into and the Sale Transaction is not being consummated for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors. All payments and other consideration to be made by the Purchaser in connection with the Sale Transaction have been disclosed. Neither the Debtors nor the Purchaser are proposing to consummate the Sale Transaction fraudulently, for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia.

13. The Purchaser has and will continue to act in good faith within the meaning of section 363(m) of the Bankruptcy Code in pursuing the transaction contemplated by the Asset Purchase Agreement.

14. The Purchaser has not engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under 11 U.S.C. § 363(n). Specifically, the Purchaser has not acted in a collusive manner with any person or entity, and the Purchaser did not enter

into any agreement with another bidder or potential bidder that controlled the purchase price of the Purchased Assets.

15. Throughout the diligence and negotiation process, the Purchaser has fully complied with the terms and conditions of the Bidding Procedures.

16. To the best of my knowledge, information, and belief, neither the Purchaser nor DFWS is an "insider" or an "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code.

**No Successor Liability; Reliance on Free and Clear Sale**

17. By consummating the Sale Transaction pursuant to the Asset Purchase Agreement, the Purchaser is not a mere continuation of any of the Debtors or any Debtor's estate, and there is no continuity of enterprise or otherwise or common identity between the Purchaser and any Debtor. The Purchaser is not holding itself out as a continuation of any Debtor. The Purchaser is not a successor to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale Transaction does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors or any of their estates. Neither the Purchaser or DFWS nor any of its Affiliates (as defined in the Asset Purchase Agreement) or their respective successors, assigns, members, partners, principals or shareholders (or the equivalent thereof) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any Affiliate of any Debtor) or any Debtor's estate, except as expressly provided in the Asset Purchase Agreement. The sale and transfer of the Purchased Assets to the Purchaser will not subject the Purchaser to any liability with respect to the operation of the Debtors' businesses prior to the Closing or by reason of such transfer, including any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the

time of the Closing, except that, upon the Closing, the Purchaser shall remain liable for the applicable Assumed Liabilities (as defined in the Asset Purchase Agreement).

18. The Purchaser would not have entered into the Asset Purchase Agreement and would not consummate the Sale Transaction, or the other transactions contemplated thereby, if the sale of the Purchased Assets were not free and clear of all Liens, or if the Purchaser would, or in the future could, be liable for any such Liens. A sale of the Purchased Assets other than one free and clear of all Liens would adversely impact the Debtors, their estates and their creditors, and would yield substantially less value for the Purchased Assets and the Debtors' estates, with less certainty than provided by the Sale Transaction. The total consideration to be provided under the Asset Purchase Agreement reflects the Purchaser's reliance on the Sale Order to provide the Purchaser, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Purchased Assets free and clear of all Liens, including, without limitation, any potential derivative, vicarious, transferee or successor liability Liens.

Executed on: October 21, 2024

*Peter Deutsch*
Peter Deutsch (Oct 21, 2024 18:30 EDT)
Peter Deutsch
Manager
DFG Real Estate, LLC